We are delighted to be with you for this week of oral argument, and I'm delighted to be sitting with my esteemed colleagues. I'm sure the lawyers in these cases have argued many cases before, so you won't be surprised by the lighting system and you know how everything works. When the red light comes on, please do wrap up your thought with efficiency, please. That being said, we will call the first case of the morning, number 20-11141, consolidated with 21-10780, United States of America v. Sosebee. Mr. Wright, good morning. Good morning, Your Honor. Thank you, and may it please the Court. With the Court's indulgence, I would like to begin today with the briefest elevator pitch for why we should win and not lose under the rule of orderliness as to the divisibility of Texas simple robbery. Very brief. And then I will turn to the question that the Court has asked us to address at oral argument, mootness, which is much more complicated and has many more citations that have not yet been submitted in the form of writing by appellant. So, my elevator pitch. On the divisibility of Texas offenses responsive to pages 3 and 4 of the government's motion, there are two principles from United States v. Herald, Judge Higginbotham's opinion. If there's anyone in the federal judicial system who spent more hours on that case than me, it was Judge Higginbotham. Several years of litigation, there was a 2018 en banc opinion that settled a dispute over the divisibility of Texas burglary, enumerated disjunctive three subsections, overruled United States v. Uribe, and that was reinstated by the unanimous en banc court. Those two principles are, one, when it comes to divisibility of a Texas crime, a federal court, including the Fifth Circuit, cannot rely on its own intuitions about the nature and structure of the statute by itself. Votes on pages 526 of 527, Part 2B, 883F3 at 526, 527, and 2nd. Federal courts are bound by unanimity holdings of Texas intermediate courts if those intermediate court decisions are interpreting and applying Texas Court of Criminal Appeals decisions. Let me ask you a question. I understand why you want to get back to the ACC and burglary and to those. My question is, what's left of the 2007 conviction? What's left of that, Your Honor, is a judgment, which carries . . . Well . . . . . . that judgment. He got a 15-year sentence. I'm still dealing in years instead of months. A 15-year sentence, Your Honor. The relief we seek includes vacating . . . That's right. . . . vacating that judgment and either re-sentencing or correction to reflect, A, a conviction and sentence under 924A2 instead of 924E, and second, a sentence to a term of imprisonment of no more than 120 months. The continuing concrete harms of that judgment include the stigma of being an armed career criminal wrongfully applied, the direct consequences of the judgment, which include a revocation of supervised release, which has not been discharged, and because it's an ACCA sentence, there is more exposure both in terms of the length of supervised release and the length of a revocation sentence. The sentence will or could have effect in the event that the newer sentence is vacated and submitted for re-sentencing in the event that we win, as I think we should. There are also indirect consequences, collateral consequences, and particularly there is a potential preclusive or persuasive effect of that judgment as to the newer case. In fact, that came to pass . . . . . . and when he imposed the sentence in 2021, he carefully revoked and supervised release. They were serving under the 277 sentence, and then he imposed another similar sentence, if you will. At that juncture, it's difficult for me to see that there's any life left in you earlier when you want to reach back to 2007 to set aside that sentence. I understand why you do and won't do that. I admired your brief, but I find it difficult to get back when there's nothing. I don't see any life in it beyond the argument that if you get back to 2007 and say, well, that was effective because of the burglary component of it . . . . . . some relief 20 years ago on that one. So, I will make an adjustment here. I don't know what adjustment he made. He gave you . . . he revoked the service of the supervised release, and then he imposed another . . . . . . you think he might have given them something more than 188 months. Is that something less, I mean? Is that right? Do you follow me? I follow you, Your Honor. So, one . . . so, long-time Fifth Circuit precedent, typically in the context of 1326B, is a challenge to a conviction and sentence under enhanced version of the statute . . . . . . does not go moot, simply because the defendant has completed all punishment components of that sentence. So, it's corrected. Whether that's a freestanding rule or whether it depends on, you know, collateral consequences, both are present in this case. The collateral consequence that came to pass here was, if not the original judgment, then the ruling in the 2255, which we are challenging . . . . . . that's what we've appealed. That ruling was used to preclude out the challenge to the Armed Career Criminal Act sentence in the newer sentencing. The government responded to the objections to the addendum to the PSR and says, you've already decided this, Your Honor, in the 2255 case. This Court does have a decision, United States v. Gamboa Garcia, which has said that Federal sentencing is not Groundhog Day . . . . . . and that where a determination is reflected in an older sentencing judgment, a statutory enhancement, the Court need not revisit it again. So, it does have preclusive effects or potentially preclusive effects as to the newer case. That's one way it hurts us. Another way that it hurts us is, in the event that we prevail, as I think we should, as to the newer sentence, there is a two-year revocation sentence. We don't know what happens to revocation sentences when the underlying judgment of conviction is vacated. There's actually been arguments set on that issue in a case called United States v. Lipscomb, where the Court . . . . . . you know, the shoes were on the other feet. The government appealed a grant of 2255. There were subsequent revocations. And, this Court rejected the view that those revocations ended the worries about the earlier judgment. So, possibly the revocation sentence goes away or it dissipates and the District Court can consider everything . . . . . . including the revocation conduct when resentencing. But, if the revocation sentence just remains as it is, two years, the District Court is still going to have to make the new sentence in the newer case . . . . . . interact with the two-year sentence. And so, it does have harm for my client. And, this is why I want to return to a point where I disagree with my friend's 28-J. We have not discharged that sentence yet, because under statute . . . In June, the sentence, if he would have been out, in any event, the 22 years would have run out, I think in June. So, the . . . when I say we haven't discharged the revocation sentence, I'm referring to 18 United States Code, Section 3585C. For administrative purposes, those two sentences, the sentence in the newer case . . . . . . and the one that was intimately bound up with the revocation sentence, those are treated as a single sentence. So, as far as the Bureau of Prisons is concerned, my client remains subject to the two-year revocation sentence . . . . . . until he discharges the both of them. And so, what the government is essentially arguing is, okay, maybe what happens later is, you know . . . . . . X, Y, Z, whatever happens with the newer case. And, maybe he isn't hurt, because he's already done enough time on this revocation . . . . . . or on the combined sentence to satisfy the revocation. However, this is where we get into the context of banked time. I don't know how much detail the court wants from that. I have other citations from courts of appeals. I would say that some court of appeals judges are reticent to embrace the Bureau of Prisons practice of banked time. I will say, that was my initial reaction after looking at the statute and seeing why they do it. It makes sense. I think it is probably the correct interpretation of 3584 and 3585. But, the fact is, if the original sentence is shrinked, if you will, to 10 years or less . . . . . . which is what we would ask for. I'm talking about on the older case. Then, the excess time that he did on that sentence gets banked. And, that banked time can only be used against the revocation sentence, which is the two years. But, with that banked time being used for the two years . . . . . . these two years become available for banking or use on whatever the new sentence will be. Now, I know, I can see from your faces, this is very outlandish. But, mootness only requires that I have a concrete interest in the outcome of the litigation. And, I do. I do because of the Armed Career Criminal Act enhancement, you know, the preclusive issue. That's the biggest one. Right? So, that is the largest one, is that it does tend to predetermine it. But, also . . . Well, if you win, what do you get? If I win on both cases or just this one? Well, if you win, period. If I win on this appeal and the 2255 is granted, the district court can either correct the 2007 judgment . . . . . . and re-sentence under 2007. It will say 924A2 instead of . . . It goes back and goes through the analysis of burglary? I think if we win the new case, then one or both of those will be resolved in our favor. Right? I think that definitely for the newer sentence to be vacated, we have to win on the merits . . . . . . which is what I started off with on that. I think that the current posture before this panel, robbery is the easier win for us. Because, again, under the rule of orderliness, we win on divisibility of Texas robbery. But, one or the other way, there's no armed career criminal. That was wrong. The mootness inquiry presumes we're going to win. And, in that case, the new sentence is going to be less than 15 years . . . less than 10 years or less. It may be consecutive to the revocation sentence or whatever sentence is, you know, dealt with previously. And, we have a concrete interest both in the judgment itself. It doesn't wrongly declare us an armed career criminal. It is the same priors that govern both cases. So, it's literally the same inquiry in front of the court. So, we're not dealing with hypothetical collateral consequences as the immigration cases typically deal with. This actually happened. In other words, they point to a ruling as to the priors from the older case . . . and use that against the objections in the newer case. So, we want correction of the sentence or re-sentencing on the 2007 sentencing to 924A2, 120 months or less. The benefit we get from that is, all of the time that he spent in prison between . . . what would be the expiration of that sentence and the present . . . it's going to eat up whatever revocation sentence he could get, because two years would be the maximum. One other point I want to make . . . I'll tell you this is further afield than what I said before, but there are a lot of circuit court cases that recognize this. A lot of courts have said that when there has been a revocation of supervised release . . . the district court maintains the power to extend that first term of supervised release . . . or to revoke it a second time and impose a longer sentence, based on conduct that preceded the first revocation. Those cases arise from the Supreme Court's decision, United States v. Cornell Johnson . . . says revocation is not the same thing as termination. Something of the original sentence remains. Most circuits that have addressed it, that I could find . . . have concluded that in some fashion, that survived the 1994 amendments to Section 35. That's true, even when he revokes the supervised release . . . and then turns around and imposes directly and immediately a new sentence? The situation is a technical violation. And so, you revoke and you get a shorter sentence. And then the judge finds out, oh, by the way, he also committed some other serious crime. I'm going to . . . I'm not going to revoke a new term. I can't do that. I'm going to re-revoke the earlier term. And, in that case, and I want to be very clear about this . . . supervised release is different because of the ACCA enhancement than it would be without . . . because it's the difference between a Class A felony under 3559 and a Class C felony. So, the maximum term of supervised release is five years instead of three . . . for purposes of extending it or modifying it. And, the maximum term of imprisonment is five years instead of two years. So . . . How much time is your client facing now? He is currently serving the combined sentence. It is a 15-year plus, so maybe a few months, one side or the other. And, two years, they're concurrent with each other at present. And, how far into that is he? The government's provided the Bureau of Prisons calculations that say if you count the back time, he is more than two years into it. So . . . And, if you don't count the back time? He is not quite two years. The sentencing was . . . I had it written down, but I won't find it now. I can get it to you on rebuttal. We haven't gotten two years since the actual pronouncement of the revocation sentence. And so, if we're relying on Bureau of Prisons administrative . . . Where does the banking principle come from? The banking of credits for a prisoner. I'm going to be quick. I don't know if I can do it in five more seconds. Go ahead, please. Okay. The statute says that a prisoner shall be awarded credit for any official detention as a result of the offensive conviction that was not credited against any other sentence. The Bureau of Prisons has interpreted Supreme Court precedent to say that the revocation penalties are part of the penalties for the original crime, and that's correct. And so, the idea being, in broad terms, if I got a 15-year sentence, 12 years into that sentence, that is corrected because the statutory maximum is 10 years. We've got two years of what we might call bonus time or something like that. Now, the Supreme Court said in Cornell-Johnson, you don't get to exchange those two extra years for two years of supervised release. That's not something that you do. But you do get to say those two years, the Bureau of Prisons now will apply 3584 and say those two years are time incarceration as a result of the offensive conviction. Yes, it has not been credited against any other offense. But this is the Bureau of Prisons' role. Are you saying that this is the Bureau of Prisons' role or the banking principle? That has its origin with the federal incarceration, the Bureau of Prisons? Yes, it's a Bureau of Prisons policy. We're telling you what they do. And like I said, we could file a set of cases, but— One final thing. Before the sentencing guidelines, and I've both practiced under those at that era and sentenced a lot of people under that era, the sentence that the judge imposed really had little—other than determining how long he served in abstract—had little content. When he went into prison, the parole board then scored him, and that determined his release date. So the Bureau of Prisons then, at that period of time, had a heavy hand in regulating the whole notions of banking, whatever went—they determined the release date. So that's the reason for my earlier question. Then when we came with the sentencing guidelines, the sentencing guidelines drew in part upon that—the practices of scoring that the Bureau of Prisons had done. And so, in essence, I saw you—this is sort of a vestigial remain of what was there, and I was questioning why it did not come away with— while the Bureau of Prisons is still—is still determining the length of time people served. I think you're right. It is similar to the pre-sentencing reform act practice, but I will say this. I don't think it's my job to convince you they're doing it right. Wilson's case from the Supreme Court says when it comes to prior custody credits, that's their job, not yours. All I have to do is to convince you there is enough of a possibility that that could happen for him that I have a stake in the outcome of the first half of the appeal. Thank you, counsel. You'll have time for rebuttal. Mr. Gilstrap. Thank you, Judge Junkin. May it please the court, Stephen Gilstrap on behalf of the United States. Unless the court otherwise prefers, I'll start with the mootness issue that was raised in the court's directive and then touch on any merits issue that the court wishes to address. First, after reviewing the four cases cited in the court's directive and confirming with BOP the amount of time that Mr. Sosby has served, Mr. Sosby's 2255 appeal is moot. While the cases in the court's directive are somewhat in tension, especially the Seventh Circuit case with this court's. That was deliberate. Moses' decision, absolutely, Your Honor. All of them support the view that once a defendant has served his revocation sentence and faces no additional term of supervised release, his case is moot. And that is the situation here as a matter of simple math. As the BOP report that was attached to the government's letter last Wednesday shows, Mr. Sosby has served 27 months and 19 days as of today. He has been credited with 27 months and 19 days as of today on that sentence. That means he has served three months and 19 days more than the 24-month revocation sentence that he received, which, to use Judge Higginbotham's terminology, is all that's left of that original 2007 conviction. He has no additional term of supervised release. And so if there were a lot of hypotheticals and speculations thrown out in the opening argument by Mr. Wright, but if the court were to, hypothetically speaking, say, okay, we're going to get rid of that revocation sentence for whatever reason, that 24 months no longer applicable to you, it would not change the amount of time that Mr. Sosby has to serve in prison because he is also subject to the separate 188-month sentence. And nothing that this court does in the 2255 appeal, standing alone, which, to survive mootness, it has to be something, some relief granted in that appeal that would benefit Mr. Sosby, is going to affect the 188-month sentence or the amount of time that he has to serve on that sentence. Because, as Mr. Wright pointed out, those sentences are concurrent, and so if you get rid of the revocation sentence in its entirety, Mr. Sosby is still going to be subject to the same amount of time in prison, as a matter of math. Now, there were a few additional things that Mr. Wright threw out as possibilities as to why this is not moot, and I think I got all of them down. Hopefully, I did. One is potential greater sentencing exposure because of the ACCA in the first sentence. And that is true. Under ACCA, he could have gotten a five-year revocation sentence, but he didn't. He got a two-year revocation sentence. And so there is no injury in this case. In the Penn case, which was the case from the Sixth Circuit that was in the court's directive, the defendant had gotten a five-year supervised release sentence. So by challenging the ACCA in the 2255, he was challenging the fact that he got five years when, if he was not subject to ACCA, he only would have been eligible for, I believe, two years or maybe three years, but less time than the five-year sentence there. And it's just not – I believe the other thing that Mr. Wright focused on was that if the sentence is vacated, it will somehow benefit him. But just as a matter of math, it's not going to here. I'm not aware of any case that has said that the stigma of ACCA is somehow – I was going to ask if you had any – I'm not aware of any case. Mr. Wright sent me several cases yesterday when we were traveling, some of which I'll address in a minute. None of those dealt with stigma that I saw. And again, because of the 188-month sentence, which he is subject to ACCA, he has that sentence – that stigma, if you will, regardless of what happens in the 2255. Again, kind of for the mootness question, it has to be redressable in the 2255. And you can't – the separate sentence makes the mootness issue very difficult for Mr. Sosebee in this case is what I'm trying to say. So in a nutshell, given that he has already served more than the 24 months, there's nothing that this court can do or the district court can do in the 07 conviction that's going to benefit Mr. Sosebee. Now, there was some discussion about how because it's an aggregate sentence, he hasn't technically discharged it. Was there any of this taken up before Judge O'Connor at the time of sentencing? No, there wasn't, and I think the chronology kind of explains why, Your Honor, because the – I believe the original 2255 in this case was filed in late – sorry, in mid-16, on June 28th of 2016. He didn't start a supervised release term until July of 2019. So when the 2255 was filed, he wasn't attacking a subsequent supervised relief revocation term because it hadn't happened yet. He wasn't revoked until July of 21, and he was actually sentenced for the separate conviction, the 188 months, the same day as he was sentenced for the 24 months. And the discussion of the overlap between the two was that the parties agreed to run them concurrently, the 24-month revocation sentence and the 188-month separate sentence, concurrently. That was the only real discussion of those before the district court. What I was – coming back to the administrative aggregate term, I understand Mr. Wright's point that technically speaking he is – BOP will not discharge him from that term until the end of the 188 months because that's just as a matter – and the statute says as a matter of administrative purposes, this is how BOP runs them. But I don't think that can save Mr. Sosebee from his 2255 appeal being moot because even though BOP won't technically discharge him, there's no relief that this court can grant him given the amount of time that he has served. And in the Nelson case, which was cited in this court's directive, the language that it uses is for a case not to be moot, there has to be some meaningful relief, a technicality of, oh, he won't technically be discharged until the end of the 188 months. I think it's a difficult position to take to say, oh, my 2255 appeal, which originated from an 07 judgment and only had a – Whatever you've got banked, you can't spend it. Well, and that can't be spent in the 188 months. The case law is clear on that. The only thing that to the extent this court wants to use bank time for anything, it's limited to the revocation. It's limited to the 24 months. But since he's already served beyond the 24 months, there's nothing to apply there is what I'm saying. Overdrawn, I guess. Something like that, Your Honor. If the court has no further questions on mootness, I'll turn briefly to the merits. Mr. Wright started off by making an argument on divisibility and the rule of orderliness, attempting to attack this court's decision in the United States versus Garrett. As the government noted in its motion for summary affirmance, Texas robbery by threat, which is the conviction that we're dealing with here that's one of the three predicates, act of predicates for Mr. Sosby, is a violent felony. This court held in binding precedent in the United States versus Garrett that that is the case. Mr. Wright's arguments about rule of orderliness and herald and everything like that. They were presented in Garrett. Those types of arguments trying to say that, oh, Texas law mandates that the Texas robbery statute is divisible and everything like that. Those were presented to the Garrett panel. The Garrett panel clearly held that the Texas robbery statute is divisible, and it clearly held that a Texas robbery by threat, which can only be committed intentionally or knowingly, is a violent felony. Under Garrett, this panel is bound by that decision. The merits are fairly straightforward because the three predicates are the robbery by threat, which qualifies under Garrett, and then there are two Texas burglary convictions, which qualify under this court's en banc decision and herald. Because those three convictions stand under binding precedent, the mootness issue may be a little more complicated than the merits in this case. As Mr. Wright said, the mootness only goes to the 2255 appeal. The court will need to address the merits in the consolidated direct appeal, but under herald and Garrett, those three predicates still count. Anything further? If there are no further questions, the government would ask that this court dismiss the 2255 appeal as moot for the reasons stated and then affirm the direct appeal in the subsequent conviction. Thank you. Thank you, Your Honor. Rebuttal, Mr. Wright. Thank you, Your Honor. Your Honor, on mootness, I think it's important that we distinguish mootness as an Article III doctrine from the federal court's discretionary concurrent sentence doctrine. Those could be mixed together here. The concurrent sentence doctrine, again, is discretionary, and it presumes that the concurrent sentence is independent of the earlier sentence. As a matter of fact and as a matter of law, that is not the case here. And so do not presume that the new sentence, the newer sentence, remains in place when you're deciding mootness as to the 2255. The time banking, if we're looking at the 2255 alone, he could bank the time, his sentence would be discharged, he could get out. Regarding what Judge Higginbotham said, that you can't spend the bank's time on the older case against the newer case, that's true, but he can bank this time that he's doing today against the newer case. So when he wins under the Armed Career Criminal Act the second time, the judge can give him probation, the judge can give him one year, the judge can give him six months. And at that point, this is why it's important that we understand the statutory basis for time banking. He cannot bank the time that was credited against the revocation sentence because, again, 3584 says not credited against any other sentence. So if he satisfied the revocation sentence earlier, that time becomes available to be used exclusively for the new sentence, whether that's a consecutive sentence, whether that's a probation sentence, revocation. So in other words, he has enough of an interest to survive mootness. And on the merits, as this very well may be the last time that I personally can talk to you about that since we weren't appointed on the other case, divisibility, according to the Supreme Court in Mathis, you're looking to state law to see what is clear, what is certain, what is definite. This is not an opportunity to make an eerie guess about what the Court of Criminal Appeals would do, as you might in a contracts case. It is what is clear. The demand for certainty characterizes the categorical approach cases from beginning to end. And so for that reason, there is no such certainty. I will challenge my opponent or the court to find a single Texas case that reverses a conviction for simple robbery because it was charged and submitted to the jury in the disjunctive under both theories. If Garrett is right, that's the law in Texas. In fact, what we find every time that has been presented— What happens in this case? If you win, when is your cot released? And if you lose, when is your cot released? To answer that question, we have to talk about the newer sentence. So the newer sentence is going to be vacated, and he's going to be resentenced. And we're going to have to find out what the judge is going to do on the newer case. And we're going to have to know what the judge does on the older case too because if the judge grants our 2255 and vacates it, he may correct it and just change the statutory provision in the judgment, which is, again, years. This court has held that that's sufficient to keep a case alive for Article III purposes in the 1326 context. So that keeps it from being moot. And then so it's possible, for instance, that the judge could sentence him in such a way that there is no additional time in 2020 for him to do on the revocation sentence. It's possible he gets probation on the new case. But this speculation is in response to the argument that there's no way it could benefit him. There's no way it could benefit him if the status quo remains, but that's why the concurrent sentence doctrine doesn't bar our appeal because they are interconnected. They are intertwined. They are the same issue decided in the same court. I would say one final case in the court's directive was Johnson v. Pettiford, which talks about the discretionary authority of the sentencing court, and that's enough to keep it from being moot. That has generated some controversy. And there was a recent decision from Judge Higginson called Herndon v. Upton, which says, well, we won't apply that where we're not dealing with the sentencing court. Well, here it is in the original sentence. What was the objection made to the sentencing before Judge O'Connor? In the newer case? What of this argument you make now was presented to Judge O'Connor? At which time? I don't mean to be— Well, I mean, the case we're here on. So in the newer case, the challenge was made, burglary is not a violent felony, robbery is not a violent felony. The judge had already ruled against it. And so that was pushing forward. The Armed Career Criminal Act doesn't apply. In the revocation case, same arguments were made. The basis of the court's decision has been overruled. I think that's undisputed because the judge ruled that all Texas robberies are violent felonies under the current precedent. So we're dealing with something new now. And so the court is essentially reviewing this in the first instance. But the argument that it was not a violent felony was presented in both the 2255 proceeding and in the newer case sentencing. The ruling in the 2255 was cited by the government as precluding relief on the new sentencing. Thank you, Your Honor. Thank you, counsel, for a well-argued case. We'll take it under submission.